Good morning. We note that you were appointed under the Criminal Justice Act. Yes, ma'am. Yes, sir. The court wants you to know we deeply appreciate your willingness to accept the assignment. Thank you, Judge. May it please the court. Again, my name is Greg Bryant. I'm an attorney from Little Rock. I represent the appellant, Larry Cooney. Larry Cooney appeals to this court a conviction for the charge of felon possession of a firearm. Mr. Cooney interposed a notice of self-defense to this charge and the government filed a motion in limine asking that the court, the district court, restrict his defense and after a hearing the court granted that motion. What Mr. Cooney first appeals to this court, the court's determination that he did not meet all a justification defense. Now, although this court has never officially recognized a justification defense, most other circuits have, but this court has said that before we even determine whether a justification defense will be recognized, that a defendant, a proponent, must beat a four-part test in which the district court found that Mr. Cooney had met two of the four parts, but he had not met a second and third element. Although the order doesn't reflect it at the hearing, the district court noted that Mr. Cooney had met one of the elements halfway, but since halfway wasn't good enough, he lost. What Mr. Cooney complains about, as far as the court's finding, is the second element, and that is that he negatively put himself in a position where he had to, or believed he had to use a firearm to prevent harm to his brother. The court doesn't make a finding that a juror would... A reasonable juror would find this. The court made... Order made a finding that no evidence was there and made a value judgment in place of what the jurors might have found. And that finding was made on the heels of recognition that Mr. Cooney was in his home and there was nothing negligent or reckless about him being there, but that even though he was in his home protecting his... Attempting to protect his brother, that, again, she made the value judgment that he was not entitled to the... Or had not met the second element. And then concerning the third element, the court made a finding that no reasonable person, a juror, could conclude that Mr. Cooney had any alternative than to violate the law, that is, take temporary possession of a firearm. And what is concerning about that is that that finding was made on the heels of finding that he had met the first element that he was... Or that the person he was protecting was under an imminent and impending threat. And to me, and I think the court should find that those two findings are inconsistent, that if there is an imminent and impending threat... Then there is no alternative remedy, as it were. There is no alternative remedy. Or course of action. And without making a finding, and I'm clear of the understanding and belief, and I think it's clear that this court cannot make a finding that the justification is recognized in this court, at least I don't think they can. I think that might be for the full panel. But without making a finding that justification defense is available to a 922 G1 violation, or any 922 charge, that finding right there presents the court with what in the 12 cases I have collected, in which, Judge, you were the author of or participated in, six of them, that the justification defense had not been properly presented to the court. And I believe this is the time, and this is the case where the justification defense should be determined whether to be recognized officially by this court or not. I do believe that it is time to officially recognize a justification defense to a 922 G charge. The US Supreme Court, not too many years ago in US versus Dixon, to a 922, I believe it was 922 N charge, not a 922 G, but was a federal firearms violation. Did recognize the duress defense, which I believe is after Bailey, those defenses have been lumped into the self defense, defense of others, duress, coercion, are now lumped into the general rubric of justification. And in Dixon, the interjection or the pleading of duress defense to a clear analogy that that case requires that for firearms charges that a defendant who does show some evidence that a reasonable person could conclude the defense was available, that those justification defenses should be officially recognized. And lastly, one of the major concerns I have is just the strictness and the burdensome that the four part test has in general. I think it's clear that in Heller and McDonald that the Supreme Court has a basis for the Second Amendment. They don't say this, but it's almost as if they want to... The Second Amendment should be written to say that everybody has a constitutional right to self defense and that has to be enforced by possession of a firearm. That's what the Second Amendment really says. And even though Mr. Cooney obviously doesn't have... Mr. Cooney or all his organization to say to the Congress or anybody else, we should be given some latitude, some right to present our self defense claim. All these cases that had been decided prior to today on whether the justification defense is available in the circuits had been based upon the common law right of self defense. They haven't been based on a constitutional right of self defense. And I think that any restriction that is onerous as the four part test is unconstitutional. I am not saying in any manner that the court doesn't have the right to make a preliminary finding under Rule 104 whether a defense is a waste of time or has no merit whatsoever. I think that is something that the court has a right to do. But I think from all the cases that have been decided that the four part test has been recognized as being very strict. And the reason so is because the court intention is to carry out what the wishes of Congress are. And that is a 922 violation is a strict liability offense that no that the four part test is a recognition of the requirements of Bailey that common law defenses are available to these types of cases, these strict liability cases. I'm just wondering here, and hindsight being what it is, couldn't CUNY have simply removed the bricks from advances area of reach by picking them up or kicking them away as opposed to taking this drastic action of bringing out the hardware? Judge, I don't know. I don't know. And that's what I'm really what I wanted the judge or the judge to allow the jury to make that decision. And that was what I think that's what the judge did. The judge made these decisions that he could have done all these things. He could have done. He could have not been charged with these horrible crimes that he had been convicted of. I don't know what I in that particular case. I think the judge finding what he was that Mr CUNY's brother was under an imminent and immediate threat, I think answers that question. I don't believe he could have. Um, and one of the things that is that even though they were, there were two other two women, his wife and an extra neighbor had tried to break up a fight. The next door neighbor observed the bricks, uh, testified in her mind that she thought that, uh, that, uh, the individual that Mr CUNY's brother was fighting with could have picked up bricks or was about to pick up the bricks. Um, uh, that wasn't done. She couldn't. That couldn't been done at that time. Um, and that Mr CUNY, that the appellant who had waited and not interjected himself in this fight, uh, walked outside only at the request of, of, uh, of another person. We, we think it was, uh, the evidence indicates it was probably, uh, uh, the brother's wife, uh, said, come get the gun and come get it now. And indicating everything, everything about Warren CUNY was, uh, excuse me, that Larry CUNY was faced with was, was an imminent and immediate. I hope that answers you. Close enough. Well, let's see. You saving the rest of your time for rebuttal? Yes, Your Honor. Okay. We'll hear from the government. Ms. Mazanti? Is that close? Ms. Mazanti, yes, Your Honor. Ms. Mazanti, would you raise the lectern a little bit? Ah, I guess it's as high as it goes. Jumped way up a whole inch. Just a whole inch. My name is Stephanie Mazanti. I represent the United States in this case. This is a case where a multi convicted violent felon took possession of a firearm when his brother was involved in a weaponless fight with a teenager. He threatened the teenager and then discharged the firearm in the city limits. In this case, defenses argued that this court should recognize justification defense. And I don't believe that that is necessary in this case because the defendant failed to prove that he met the required elements of the justification defense. And the district court did not abuse its discretion in finding that the motion eliminating, excluding this defense should be granted. Additionally, defense counsels argued that there should be a new, less restrictive test put in place. And I also disagree with that assertion and I think that their current precedent prohibits the court from doing so. Is this felon foreclosed from raising the constitutional right of self-defense? Your Honor, the other circuits have recognized that in certain situations a convicted felon may raise such a defense. In other words, had Vance, or what's this fellow's name, Vance come into the house, started charging the right to raise the pistol and shoot him? Your Honor, without more detail involved in that, I can't speak to that. First of all, the defendant in this case was in constructive possession of the gun, which he would not have been entitled to be in constructive possession of that gun. In many of the cases in which the court has recognized that a convicted felon may take possession of a gun, the convicted felon wrestled a gun away from the attacker. In this case, Evans was not, did not have a weapon, not even a gun, but just as a theoretical matter. Back to Judge Weber's decision about the alternative methods that the defendant could have used. The defendant could have insisted that one of the other people present take the handgun outside to attempt to break up the fight, or he could have proceeded without the handgun. Well, I suppose that's true. Is there any evidence in the record about the disparity of size between defendant and Vance, or whatever that fellow's name was? Your Honor, other than the district court's observation of the people who testified before the court, there's no... Well, the defendant's brother was not in very good shape, wasn't he? Suffered from heart failure? He had had previous heart attacks, and that was in the record. Yes, Your Honor. He was about 50 years old at the time, had previously suffered from various physical ailments. However, there is evidence in the record also that the defendant's brother initiated the contact, the first contact, when he pushed his own daughter, or his own stepdaughter, into Mr. A. Vance. And so that's another issue that we have here in discussing whether this defense of others test, or the defense of others should be allowed in this case in particular, because there is some evidence in the record that the person who Mr. Cooney sought to protect was, in fact, the aggressor. In addition to that, Mr. Cooney, at the time he discharged the firearm, I think the record is clear that both Mr. A. Vance and Warren Cooney were standing, and therefore could not reach any bricks to use his weapons. And that, in fact, Larry Cooney told... Warren Cooney was discussing the fact that Warren Cooney would not let Mr. A. Vance go. And therefore, Larry Cooney is saying he's trying to protect his brother. His brother is the one who wouldn't stop the fight. Well, as I remember the facts, when Ms. Brooks... Was it Ms. Brooks that told the appellant about the fight and asked him to get the gun and go outside? I think the testimony was that the appellant was not directed as to where the gun was located. That's correct, Your Honor. The indication is that he knew exactly where the gun was located. The gun was in the house. Was there a problem with that from the standpoint of conditions of release? Your Honor, in the government's... How does that aspect play into this? In the government's view, Your Honor, I mean, the district court did comment on that fact, that there was some indication that he might have been in constructive possession of that firearm. I think if he was deemed in constructive possession of the firearm before any imminent threat arose, then he doesn't meet the first prong, because at the time he comes into constructive possession of the gun, there is no imminent threat. If he knows where the gun is, he had access to it. Clearly, no one had to tell him where to go get it. And so the district court did make a comment in that regard, that there would be an issue as to the constructive possession, and I think correctly so. And I think when the court considers that fact, because the defendant was in constructive possession of the firearm, the first prong is not met in any event. The question that I would have for you is, how is calling the police going to remove the immediate threat of harm involved in advance having these bricks within his reach? It seems to me that we got too many things going here and not enough people to carry them out. Your Honor, there was evidence that every person in the house had a Mr. Cooney actually admitted on the stand that he probably could have called the police. He chose not to do so. I understand the court's concern with the bricks laying around, but the district court found that there was no convincing evidence that anyone attempted to use the bricks as a weapon. And so that's something that I think is of important note, because the district court had the opportunity to observe the credibility of the witnesses. And I would also point out that no one mentioned the bricks until we get to the point where there's an issue regarding self-defense. And that's an important factor whenever we consider the credibility of the witnesses and whether, in fact, anyone was actually concerned that bricks would be used. Regardless of that, as the court has noted, people could have moved the bricks out of the way, or there's six people there. There's other reasonable legal alternatives where six people could have worked together to break this fight up, where the defendant didn't have to take possession of a firearm. He could have used another weapon to break this fight up if he felt that that was necessary. In any event, I think that the force used here was excessive. And that was why the government argued at the district court level that the fourth prong of the test wasn't met either, because the force was excessive. I think there's a case out of the Fifth Circuit, United States v. Gantt, where that was one of the factors the court considered in determining that the fourth prong wasn't met is because the firearm into it. Here, that's exactly what the defendant did. There was no weapon involved until the defendant brought one into it. It wasn't necessary to break up the fight. There were several other reasonable legal alternatives to it. Well, the government certainly takes a hard line on these felon in possession cases. I wonder how often, well, I won't ask you how often, whether it's within the prosecutor's power to decline prosecution, but that's not a first. I was struck when I was reading this transcript of the exchange between the officers and the defendant, the poignancy of this statement, well, I might as well just let them have the damn fight, shouldn't I? But I suppose in retrospect, he regrets, well, maybe he didn't. I guess that's neither here nor there. But you enforce this with vengeance. I was reading some of the cases, re-reading some of the cases. Minnesota, I guess, where the person tried to hide the gun to keep it away from his children, but that won't fly either. Well, that has nothing to do other than to prove that you take a very hard line on these cases. Your Honor, I think it's important that we do. And I think that... Well, that's the argument, right? A felon wants a felon, should have emblazoned upon his or her heart that I can't even be in the community. He has multiple convictions for raping children. And that is the type of person, I think, that this statute is aimed at. In other words, he was no technical felon. That's right. In the sense of the word that... Well, we won't go any further with that. He doesn't have an... Is he not one of the people... He conceded that he is not one of the people that you may see in an as-applied challenge, where you have a person that might be more as-applied challenge, because he is more dangerous than the common man. And finally, how do you respond? Or maybe you have, and I've just missed it to the argument that Mr. Bryant made, that there was some inconsistency in the district court's findings. I don't think that there is any inconsistency in the district court's findings. And I think that in other cases, that the circuits have... Whenever they have considered whether or not this defense applies, that at times, they do find that there is an imminent threat, but that the defendant could have taken reasonable legal alternatives in ridding himself of the danger. And so I don't think that those are inconsistent in any way. And the Supreme Court has acknowledged this test in Bailey, and the Eighth Circuit has actually stated that if we recognize this defense, then we would use this four-part test to set forth... And that's in United States v. Poe, which is an Eighth Circuit case out of 2006. So I think that forecloses the argument. That, combined with the language in Bailey, that this other reasonable legal alternative element has to be there in any justification defense. Bailey states that, and Poe then states that in the event this court were to adopt a justification defense in this circuit, that that four-part test will be used. And so I think defendants' arguments regarding some other alternative tests are foreclosed. With regard to... With regard to the court's comment about why the district court noted Mr. Cooney's comment that he may as well have let them fight, I think that cuts against the imminent threat prong on this. Because if he actually believed that his brother was in danger of death or serious bodily injury, he wouldn't have said that. And I think that is one aspect of why the district court pointed that out. Although the district court did make the finding contrary to that, in that there was an imminent threat. With regard to the second prong that the defendant recklessly or negligently placed himself in this situation, there are multiple cases out of this circuit where it's very clear that if you interject yourself into an altercation where it's not necessary, then you're not entitled to this defense. And then particularly in El Amin, there the Eighth Circuit discussed the fact that the defendant in that case should have called the police and the fact that the defendant had no need to swap out a knife for a gun. In Blankenship, the same type of facts arose and the Eighth Circuit noted the defendant should have simply called the police rather than escalating the argument or interjecting himself into the situation outside the home. Mr. Cooney could have just stayed inside his house. If he had done that, he wouldn't be in this position. But he didn't. He chose to go retrieve a firearm that he had access to and was in constructive possession of already. And then he went and he went outside. He threatened a teenager with it. The individual that's fighting here was 19 years old at the time, fighting a grown man. And the district court was in a position to see the size of these individuals. The district court, while the teenager may have been winning the fight by all accounts, it's hard to believe that six people could not have broken this fight up. What about Mr. Bryant's argument that a jury should have been able to make that determination of whether there was a reasonable alternative course of action and all that sort of thing? Your Honor, the test question of fact for a jury? I don't believe in this situation it is. Well, ever. Can you can you conceive of a situation where the jury would have to make that value judge? I can't. I believe there could be a situation in which that would would be a question for the jury. Not in this case, Your Honor, because I don't believe it's disputed. And in fact, the defendant admitted that he could have called the police. Um, and that and no basis for finding otherwise. In addition to that, there was no basis for finding that he couldn't have used another weapon aside from a firearm. And whenever there's no underlying evidentiary foundation to support one of these elements, the district court is in a position to say that there is no way a reasonable jury could make this finding. And therefore, there's no point in submitting it to the jury, and it would only confuse the issues. It would result potentially in jury nullification. And that's the exact reason that the United States moved in limine in this case to prevent these sorts of arguments from coming in. Your Honor. Again, the court did not abuse his discretion in finding that the defendant failed to meet these this four prong test this four prong test. If the court were to decide the justification defense were appropriate, this four prong test is the appropriate test under current precedent. And this court need not decide the issue, though, as to whether justification defense applies in the circuit because the defendant has failed to meet his burden in the case. And I would respectfully request that the court affirm the judgment of the district court. Very well. Mr. Cooney was first arrested in state and charged in state court. Those charges were later dismissed after there was a government indictment. Miss Bazzani is arguing that there was no abuse of precedes to argue that the judge was incorrect in her finding that Mr. Cooney had met points one and four. At the same time, I contend that the standard review is de novo. There are cases that say both ways, but I believe because this was a motion to limine that was heard under rule 104. It's a preliminary finding. Therefore, it is a de novo review. Judge Shepard in regards to your question regarding constructive possession, that was never a prosecution theory that was raised until court. If it had been the basis of one of the government's allegations or government indictment, that was more appropriate to be raised in the motion limiting. You can't plead self-defense to a constructive possession charge and they didn't do that until we got to the hearing phase of it. So I submit that not be the basis of the government's argument or should not be. Well, I raised that issue because it seems to me that it may be relevant to this element about whether the appellant recklessly or negligently placed himself in a situation in which it was probable that he would be forced to commit this act by living in a house where there's a firearm and he knows where it is. It seems to me that at least has some relevancy to his own culpability, if he's placing himself in this situation where we've got an emergency situation and here's an available handgun. And I think there's some dispute to whether he was immediately aware or always aware or aware other than before that time. And that's why a jury should have at least been able to decide that. And that's all he's asking for as a trial. I thought it was undisputed that when he was told about the gun, when he was told to go get the gun, he just went and got it. There was no... Is there some testimony that he didn't know where it was? He had to be told? I don't... Judge, no, I don't think that was developed. The gun was on the ironing board where I think the testimony was. It has been placed there the night before and it had not been out in open view or accessible up until that point. But he's wanting... All he wants to do is present, I'll present that to the jury. And I, which I don't think, I think because it is now a constitutional right to plead self defense, that he should be given that jury right. Thank you. We thank both sides for the argument. The case is submitted. We will take it under consideration.